UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS M. JANIS, | ) | Civ.  05-5027-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER OF REMAND |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Nicholas M. Janis, moves the court for reversal of the Commissioner of Social Security's (Commissioner) decision denying his application for disability insurance benefits under Title II of the Social Security Act.  Janis seeks an immediate finding of disability and award of benefits.  Defendant opposes the motion.  The court reverses and remands the Commissioner's decision.

## PROCEDURAL BACKGROUND

From February 1990 to December 1996, Janis received social security disability insurance benefits.  AR 23.[1]  Pursuant to Pub. L. No. 104-121, his benefits were terminated in January of 1997 based on a finding that alcohol abuse materially contributed to his disability.  AR 23.

------

[1] Throughout this order, the court will use "AR" to cite the administrative record.

On January 9, 1997, Janis submitted a new application for benefits, arguing that he was permanently disabled due to medical complications since January 1, 1997.  AR 124.  The application was denied initially and on reconsideration.  AR 97-101.  Janis requested a hearing, which was held before ALJ James Kaplan on July 28, 1999.  AR. 47-98.  ALJ Kaplan issued a decision finding that Janis became disabled on March 24, 1999.  AR 540-51. Janis appealed ALJ Kaplan's findings to the Appeals Council, and the Appeals Council remanded for a determination of whether Janis was disabled prior to June 30, 1998, when his benefits coverage expired.   AR 44-46.

On remand, a hearing was held before ALJ James Geyer.[2]  Janis waived his right to appear and testify at this hearing.  AR 583.  Following the hearing, ALJ Geyer issued a decision finding that Janis was not disabled at any time during the period between January 1, 1997, and June 30, 1998.  AR 40-41. The Appeals Council denied Janis's request for review.  AR 13-15. Accordingly, ALJ's Geyer's decision is the "final decision" under 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Janis was born on March 22, 1949.  He dropped out of school in the twelfth grade and later obtained a GED.  He has both police academy and

---

[2] For clarity purposes, all references to an ALJ, a hearing before an ALJ, or an ALJ's decision refer to ALJ Geyer unless explicitly stated otherwise.

2

CNA training.  AR 25.  After dropping out of school, he worked three and one-half years in maintenance and sanitation.  AR 373.  Then he worked five years as a police officer.  He joined the Army at the age of 29 and was discharged "General under Honorable Conditions" for substance abuse two and one-half years later.  AR 373.  Janis last worked in 1989 as a custodian.  AR 52.  Between 1983 to 1989, Janis also worked occasionally as a range aide, poisoning prairie dogs for the Bureau of Indian Affairs.  AR 53.

In August of 1993, Janis had right carpal tunnel release surgery.  AR 687.  Then, in November of 1994, Janis underwent one-vessel angioplasty to treat coronary heart disease.  AR 333. In March of 1996, Janis exhibited mild diabetic retinopathy according to treatment notes from the Veteran's Administration (VA) eye clinic.  At some time prior to January of 1997, Janis had his left big toe amputated.  AR 333.

On October 4, 1996, Janis was admitted to the VA hospital for treatment for alcohol dependence.  Pursuant to the admission, Raymond Luebeck, Ph.D., performed a psychological and personality assessment, finding that Janis exhibited antisocial and borderline features, that he had high energy levels with difficulty focusing his activities, and that he tended to be irresponsible, impulsive, rebellious, and to have poor social functioning.  AR 199.

Treatment notes on October 24, 1996, indicate that Janis was feeling good and had no new problems. The notes indicate that Janis had occasional chest pains treated by taking nitroglycerin. AR 316.

On February 13, 1997, Richard L. Beasley, M.D., performed a consultive evaluation in conjunction with Janis's application for disability benefits. AR 203-04. Dr. Beasley noted Janis's history of angioplasty to treat coronary artery disease. Dr. Beasley stated that the angioplasty completely treated Janis's coronary heart disease and that Janis did not have any additional chest pains following the angioplasty. Dr. Beasley also noted Janis's history of carpal tunnel syndrome. Dr. Beasley concluded, however, that this would not present significant problems because the condition was completely rectified. Dr. Beasley noted Janis suffered from diabetes mellitus, but found that he did not exhibit any sensory deprivation or motor deprivation. Dr. Beasley also noted that Janis's extremities did not exhibit clubbing or cyanosis, and that Janis could walk on his tippy toes and heels.

On February 28, 1997, Janis was treated at the VA podiatry clinic for diabetic preventive foot care. AR 308. Janis reported no new foot problems. An evaluation indicated no hyperkeratotic lesions and no evidence of edema, erythema, cellulitis, fissuring, or any other breaks in the skin.

On June 25, 1997, Janis was admitted the domiciliary at the VA Hospital in Hot Springs, South Dakota, for alcohol dependency treatment.

4

During a physical exam following admission, the physician diagnosed Janis with diabetes mellitus with mild neuropathy.  AR 305.  Janis was able to feel a soft touch on both feet.  AR 304.

On July 11, 1997, Janis returned to the VA podiatry clinic.  The treatment notes indicate that Janis exhibited "evidence of absent protective sensation in the left foot and diminished in the right."  AR 296.  There was no evidence of edema, erythema, cellulitis, fissuring, or any other breaks in the skin.

On July 15, 1997, Stephen Goff, M.D., evaluated Janis and referred him to a group exercise program, which involved walking to promote general conditioning.  AR 298-99.  On August 11, 1997, treatment notes indicate that Janis was assigned to a daily exercise group for general conditioning.  AR 257. The notes indicate that Janis was generally in good physical condition.  Janis was discharged from the group exercise program on October 3, 1997.  AR 241. The notes indicate that he attended regularly, participated well, and met his goals.

Treatment notes from August 11, 1997, indicate that Janis was interested in ceramics and leatherwork.  AR 256.  Accordingly, Janis was assigned to arts and crafts for one hour per day, five days a week.

On August 22, 1997, Janis again returned to the VA podiatry clinic, complaining of a blister caused by walking without his prosthetic shoes.  AR

5

249.   The evaluation indicated diminished protective sensation bilaterally. Aside from the blister above, there was no other evidence of edema, erythema, cellulitis, fissuring, or any other breaks in the skin.

On October 8, 1997, Janis underwent vocational rehabilitation testing, which indicated slightly below average motor coordination attributed to carpal tunnel syndrome.  AR 238.  The testing also indicated finger dexterity in the slightly below average range, manual dexterity in the slightly below average range, and eye-hand-foot coordination in the average range.  The test scores indicated that Janis met or exceeded the requirements for numerous occupational listings contained in the Dictionary of Occupational Titles (DOT). Short-term vocational training was recommended.  AR 238.

Janis was assigned to Art Advantage, a "Compensated Work Therapy" program, in which he glued parts of picture frames together.  AR 79.  Janis quit this assignment on November 5, 1997, because of conflict with his supervisor.  AR 236.  Janis initially claimed that the supervisor was singling him out for making mistakes, even though other similarly situated patients made similar mistakes.  AR 236.  He claimed that this was caused by racial discrimination.  Later, however, Janis testified that the supervisor properly criticized him because the cramping in his hands caused him do a poor job. AR 75.

6

On December 15, 1997, James Kullbom, M.D., stated that Janis had "full-blown" numbness of the hands.  He noted that Janis cannot hold a pencil very long.  He attributed this numbness to diabetic neuropathy because Janis previously had carpal tunnel release.  He referred Janis to Dr. Goff for an evaluation.  Following an EMG on January 15, 1998, Dr. Goff found "generalized neuropathy, no evidence for significant superimposed median neuropathy."  AR 225.

In December 16, 1997, a reviewing, state physician completed a residual functional capacity (RFC) assessment.  The physician opined that Janis had the ability to lift fifty pounds occasionally, twenty-five pounds frequently, stand six hours in an eight-hour work day, sit six hours in an eight-hour work day, and unlimited ability to push or pull.  AR 206.  Janis could stoop, kneel, crouch, and crawl frequently.  AR 207.  He could balance occasionally, as well as climb a ramp or stairs.  AR 207.  Janis had no manipulative or visual limitations.  AR 208.

On January 14, 1998, Janis requested an excused absence from the VA domiciliary so that he could travel to Pine Ridge, South Dakota, and apply for two CNA positions.  AR 457.  The treating notes mention that Janis recently completed a CNA training program.  Janis failed to return and was discharged from the VA domiciliary on January 26, 1998.  AR 467.  The discharge

summary states that Janis participated in the "Compensated Work Therapy" program until his discharge.

On August 31, 1998, Hasan Akhtar, M.D., admitted Janis to the hospital for burn blisters on both of his feet.  AR 458-60.  Janis apparently burned his feet at a traditional sweat lodge ceremony.  Following the ceremony, Janis walked downtown.  The burns caused him to go to the emergency room the next day.

On October 29, 1998, Dr. Akhtar completed an RFC questionnaire.  AR 365-69.  Dr. Akhtar diagnosed Janis with diabetes mellitus with peripheral and autonomic neuropathy, degenerative joint disorder of both knees, borderline osteoporosis, and status post of amputation of two toes in both feet.  Dr. Akhtar opined that Janis cannot maintain substantial gainful employment, that pain will constantly interfere with his concentration, that he can only walk one-half block because of pain, that he can sit continuously for more than two hours at one time and two hours total in an eight-hour day, that he could stand continuously five minutes at one time and five minutes total in an eight-hour day, that he could lift no weight, that he can do no fine manipulations, and that he will be absent from work all the time because of the impairment or treatment.  Under other limitations, Dr. Akhtar noted that Janis had "markedly decreased sensation on both feet."  AR 369.

On December 18, 1998, Christopher Elia, Ph.D., examined Janis. AR 372-77.  He noted that Janis had a labored gait.  Following a cognitive evaluation, Dr. Elia opined that Janis is unemployable due to "alcoholism and physical limitations related to diabetes."  Dr. Elia also opined that Janis had the cognitive ability to work if he got these conditions under control.

On January 4, 1999, Dave Johnson, M.D., examined Janis in conjunction with Janis's application for benefits.  Dr. Johnson noted that Janis exhibited multiple medical problems, including diabetes, sensory neuropathy, an unhealing foot ulcer, mild osteoarthritis in the knee, and coronary artery disease.  AR. 382.  Based on the foregoing, Dr. Johnson recommended that Janis not lift or carry anything over five pounds and not walk more than one-fourth of a mile.  He also recommended restricting stooping, climbing, kneeling, and handling.  Finally, working in hazardous environments, particularly extreme temperatures, should be avoided.  A treadmill stress test was indeterminate because Janis quit after only twenty-one seconds, when his knees started to give out and he became light headed. AR 383.  Dr. Johnson noted that Janis did appear unstable.

Following the examination by Dr. Johnson, Janis walked approximately twenty-eight blocks from Dr. Johnson's office back to the Vet's Center in Rapid City, South Dakota.  AR 422.  Janis experienced chest pain during the walk, stopped frequently, and took about fifteen does of nitroglycerine.  Later,

9

upon returning to the VA domiciliary in Hot Springs, South Dakota, Janis was admitted to the hospital for chest pain.  He experienced chest pain, dyspnea, and diaphoresis.  He rested one day and felt much better.  AR 423.

On January 19, 1999, a reviewing, state psychologist filled out a mental RFC.  AR 392-402.  The psychologist opined Janis was "moderately limited" in the ability to accept instructions and respond appropriately to criticism from supervisors.  AR 393.

On July 18, 1999, Janis appeared at a hearing before ALJ Kaplan. Janis testified about his previous work as custodian and a range aide.  AR 52-55.  He also testified about several jobs for which he recently applied—a  jailer in March of 1999, a custodian at the Indian Health Services in Pine Ridge in March of 1999, and a CNA position through the Job Training Partnership Act in April of 1999.  He also testified that he applied for a position as a cashier at Taco Johns.  AR 61.  Janis testified that he could walk one to two blocks, that he can sit and stand about ten or fifteen minutes at one time, and that he can lift five pounds.  AR 72-73.

Janis also testified that he lives at his cousin's house. AR 51.  He testified that while at his cousin's house, he would tend livestock between seven to fifteen days per month, four months per year.  AR 79.  On a day when he tended livestock, Janis started at about 6 a.m.  AR 78.  He rode a horse between five different locations, riding between fifteen to thirty minutes

10

at a time.  AR 77.  Upon arriving at a location, Janis lifted a handle on the pump to fill a water trough and checked the livestock for disease.  AR 77-78. Janis testified that he rested for about thirty minutes after filling the water at each location.  AR 77.  He usually finished between 3 p.m and 4 p.m.  AR 78.

A vocational expert (VE) also testified at the hearing.  AR 89-96.  Based on a hypothetical posed by the ALJ Kaplan, the VE opined that the hypothetical person could perform, among others, two sedentary, unskilled jobs—order clerk and charge account clerk.  AR 93.  The VE also described the physical and mental demands of those jobs.

On April 5, 1999, a reviewing, state physician completed a second RFC assessment.  The physician opined that Janis could lift or carry twenty pounds occasionally and ten pound frequently, could sit and stand about six hours in an eight-hour day, and had no limitations on his ability to push or pull.  AR 492.  The physician also opined that Janis exhibited no postural, manipulative, or visual limitations.  AR 493-94.

On June 25, 2002, Dr. Akhtar completed another RFC questionnaire, which specifically asked Dr. Akhtar to opine on Janis's RFC from January 1, 1997, to June 30, 1998.  AR 603-07.  Dr. Akhtar diagnosed Janis as having diabetes mellitus with neuropathy, coronary heart disease status post of angioplasty twice, osteoporosis, degenerative joint disease of multiple joints, and hypertension.  Dr. Akhtar noted that Janis had numbness in both feet

above his ankles, decreased sensation in the wrists, and decreased vision.

Dr. Akhtar opined that Janis was "unable to do any gainful work," that he

could not walk more than one-half block, that pain would constantly interfere

with his attention, that he could sit continuously for five minutes at a time

and less than two hours total in an eight-hour day, that he could stand

continuously for ten minutes at a time and less than two hours total in an

eight-hour day, that he could occasionally lift less than ten pounds, and that

he could do no repetitive tasks with his hands, arms, and fingers.  AR 603-05.

Dr. Akhtar listed other limitations as decreased vision, decreased hearing in

the right ear, and no sensation in Janis's feet.  AR 606.

## ALJ DECISION

On February 24, 2003, ALJ Geyer issued a decision denying Janis's

application for benefits.  The ALJ applied the sequential five-step evaluation[3]

process and held that Janis was not disabled.  First, the ALJ found that Janis

---

[3]  The five step sequential evaluation process as outlined by the Eighth
Circuit is: (1) whether the claimant is presently engaged in a "substantial
gainful activity;" (2) whether the claimant has a severe impairment—one that
significantly limits the claimant's physical or mental ability to perform basic
work activities; (3) whether the claimant has an impairment that meets or
equals a presumptively disabling impairment listed in the regulations (if so, the
claimant is disabled without regard to age, education, and work experience); (4)
whether the claimant has the residual functional capacity to perform his or her
past relevant work; and (5) if the claimant cannot perform the past work, the
burden shifts to the Commissioner to prove that there are other jobs in the
national economy that the claimant can perform.  Baker v. Apfel, 159 F.3d
1140, 1143-44 (8th Cir. 1998).

had not engaged in substantial gainful activity (SGA) since the alleged onset of disability.  Next, he found that Janis suffered from diabetes mellitus, mild depression, personality disorder, and substance abuse, which were severe impairments as defined in the regulations.  Third, the ALJ found that Janis's impairments did not meet or exceed the requirements of the disability listings in Appendix 1, Subpart P, Regulation No. 4.  At step four, the ALJ found that prior to June 30, 1998, Janis did not have the RFC to perform his past relevant work.  At step five, the ALJ found that Janis had an RFC to perform the jobs of order clerk and charge account clerk, both of which existed in significant number in the national economy.  Janis's drug and alcohol abuse was not a material factor in the ALJ's findings.  Accordingly, the ALJ found that Janis was not disabled any time during the period of January 1, 1997, to June 30, 1998, when his benefit coverage expired.

## STANDARD OF REVIEW

The decision of the ALJ must be upheld if it is supported by substantial evidence in the record as a whole.  See 42 U.S.C. § 405(g); Metz v. Shalala, 49 F.3d 374, 376 (8th Cir. 1995).  Substantial evidence is less than a preponderance but enough evidence that a reasonable mind might find it adequate to support the conclusion.  See Fines v. Apfel, 149 F.3d 893 (8th Cir. 1998).  See also Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d

842 (1971).  Review by this court extends beyond a limited search for the existence of evidence supporting the Commissioner's decision to include giving consideration to evidence in the record which fairly detracts from the decision. See Brockman v. Sullivan, 987 F.2d 1344, 1346 (8th Cir. 1993); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992); Turley v.Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

The court's role under section 405(g) is to determine whether there is substantial evidence in the record as a whole to support the decision of the Commissioner and not to re-weigh the evidence or try the issues de novo.  See Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992).  Furthermore, a reviewing court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision."  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).  See also Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993).  The court must review the Commissioner's decision to determine if an error of law has been committed.  See Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992); Nettles v. Schweiker, 714 F.2d 833, 836 (8th Cir. 1983).  The Commissioner's conclusions of law are only persuasive, not binding, on the reviewing court.  See Smith v. Sullivan, 982 F.2d at 311; Satterfield v. Mathews, 483 F. Supp. 20, 22 (E.D. Ark. 1979), aff'd per curiam, 615 F.2d 1288, 1289 (8th Cir. 1980).  If the ALJ's decision is supported by substantial evidence, then this court cannot reverse the decision

14

of the ALJ even if the court would have decided it differently.  See Smith v.
Shalala, 987 F.2d at 1374.

## DISCUSSION

## I.      Severe Limitations

Janis contends that the ALJ erred at step two in the sequential analysis
because the ALJ did not explicitly include diabetic peripheral neuropathy as a
severe limitation.  A physical or mental impairment constitutes a "severe
limitation" if it imposes "more than a minimal effect" on the claimant's ability
to do basic work activities.  Johnston v. Apfel, 210 F.3d 870, 874 (8th Cir.
2000); see also 20 C.F.R. § 404.1520(c).

The ALJ found that Janis suffered from "diabetes mellitus, mild
depression, personality disorder, and substance abuse, medically
determinable impairments which . . . were 'severe' based on the requirements
in the Regulations . . . ."  AR 40.  Janis acknowledges that the ALJ concluded
that Janis's diabetes constituted a "severe impairment."  Janis argues,
however, that the ALJ needed to explicitly determine whether the symptoms of
diabetes mellitus were also severe impairments, specifically peripheral
neuropathy.

Janis's objections to the ALJ's step-two findings lack merit.  First,
neither case law nor the regulations require the ALJ to consider the specific
symptoms caused by each condition; rather, symptoms are what makes a

specific medical condition a severe limitation.  Cf. Johnston, 210 F.3d at 872-75.  In Johnston, the claimant specifically argued that she was disabled because of "complications from hyperthyroidism and heart problems."  In affirming the ALJ's decision that neither hyperthyroidism nor heart disease qualified as "severe impairments," the Eighth Circuit considered whether the symptoms of each medical condition had more than a minimal effect on the claimant's ability to work.

Janis's argument further lacks merit because the ALJ did consider Janis's diabetic peripheral neuropathy in finding that Janis suffered from a severe impairment.  The ALJ explicitly recognized that peripheral neuropathy was a symptom of Janis's diabetes mellitus.  AR 32 (stating that Janis "has a longstanding history of insulin dependent diabetes mellitus with neuropathy").  And, based at least in part on this symptom, the ALJ concluded that Janis's diabetes mellitus qualified as a severe impairment. The court finds that the ALJ's step-two findings are supported by substantial evidence in the record as a whole.

## II.    Listing Criteria

Janis contends that the ALJ erred at step three because he did not find that Janis satisfied the presumptively disabled regulations (Listings) contained in 20 C.F.R. pt. 404, subpt. P, app A.  At step three, the ALJ determines whether the claimant suffers from an impairment that is

16

contained in or equal to the impairments contained in the Listings.  "If the claimant suffers from an impairment that is either included in, or equal to, an impairment listed in the Commissioner's itemization of presumptively disabling impairments (the Listings), the claimant will be determined to disabled without consideration of his or her age, education, or work experience."  Cunningham v. Apfel, 222 F.3d 496, 501 (8th Cir. 2000).  The plaintiff has the burden of presenting medical evidence that he satisfies the listing criteria.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  A reviewing physician's opinion can provide substantial evidence to find that a claimant does not satisfy the Listings.  Ostronski v. Chater, 94 F.3d 413, 417 (8th Cir. 1996).

Janis contends that he satisfies Listing 9.08A,[4] which states that a claimant with diabetes mellitus is presumptively disabled if the claimant has "[n]europathy demonstrated by significant and persistent disorganization of

---

[4] Janis also contends that his medical condition satisfies the listing criteria contained in Listing 11.14, which states: "Peripheral neuropathies. With disorganization of motor function as described in 11.04B, in spite of prescribed treatment."  20 C.F.R. pt. 404, subpt. P, app. 1 § 11.14.  Listing 11.04B defines disorganization of motor function as "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)."  20 C.F.R. pt. 404, subpt. P, app. 1 § 11.04B.  Listing 9.08A and 11.14 describe virtually identical conditions.  Listing 9.08A merely limits the cause of the neuropathy to diabetes mellitus.  The parties agree that Janis's neuropathy is caused by diabetes mellitus.  As such, Janis's case is properly analyzed under Listing 9.08A, rather than 11.14.

motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)."  20 C.F.R. pt. 404, subpt. P, app. 1 § 9.08A.  Listing 11.00C states:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, axatia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment.  The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. pt. 404, subpt. P, app. 1 § 11.00C.  Finding that Janis's diabetes mellitus with neuropathy did not "meet or medically equal the clinical severity described in Listing 9.08," the ALJ stated that "the record fails to establish that claimant had significant and persistent disorganization of motor functioning in two extremities resulting in sustained disturbance of gross and dexterous movements or gait and station prior to June 30, 1998."  AR 32.  The court will affirm if the ALJ's finding that no Listing is satisfied is supported by substantial evidence in the record as a whole.  Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999).

Although the record does establish that Janis suffered from diabetes mellitus with peripheral neuropathy prior to June 30, 1998, the ALJ's finding that this condition was not of listing level severity is supported by substantial evidence on the record as a whole.  Dr. Beasley, following examination on

June 13, 1997, stated that he did not "notice any sensory deprivation at this point." AR 204. Throughout the fall of 1997, Janis participated in both a walking, group exercise program and an arts and crafts program at the VA domiciliary. AR 241, 256, 299. On October 8, 1997, Janis underwent vocational rehabilitation testing, which found that he had below average motor coordination, slightly below average finger dexterity, and slightly below average manual dexterity. AR 238. Two different reviewing, state physicians' RFC assessments stated that Janis had no manipulative limitations and could stand for six hours in an eight-hour work day. AR 208, 494. Dr. Johnson, an examining physician, noted that Janis exhibited an antalgic gait and that his "[s]ensation appears diminished in the fingers and toes." AR 381.

Dr. Johnson opined that Janis should not walk more than one fourth of a mile or lift or carry anything over five pounds. Dr. Johnson also stated that Janis's handling of objects should be limited. AR 382. Following the examination, Janis walked approximately twenty-eight blocks, although he often stopped to rest and experienced chest pains. AR 422.

Furthermore, Janis's testimony before ALJ Kaplan does not support the allegations that his neuropathy was of a listing level severity. Janis testified that he was currently living at his cousin' s home and tending livestock. AR 76. When tending livestock, Janis would ride a horse between five different locations, check the cattle, and pull a pump handle to water the cattle. AR

19

77.  The horse ride lasted fifteen to thirty minutes between each location. After watering the cattle, he would rest for about thirty minutes.  Janis testified that he did this between five to fifteen days a month, nine to ten hours a day.  AR 78-79.  Tending livestock for nine hours a day, up to fifteen days a month, is not consistent with the severity of the limitations contained in Listing 9.08.  Cf. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994) (stating that tending livestock, among other things, was inconsistent with claimant's allegations of debilitating pain).

Janis notes that Dr. Kullbom stated that Janis had numbness of the hands, which prevented him from holding "a pencil for very long."  AR 229. Dr. Kullbom, however, provided no medical support for this finding.  Rather, he referred Janis to Dr. Goff for EMG testing, which revealed generalized neuropathy.  AR 225.  Dr. Goff's findings do not indicate the severity of this neuropathy.  Additionally, Dr. Akhtar's opinion that Janis suffered from diabetic neuropathy does not compel a finding that Janis satisfied the Listings because, as discussed below, the ALJ properly discounted this treating physician's opinion.

In short, the evidence in the record as a whole substantially supports the ALJ's finding that Janis did not suffer from limitations of a listing level severity.  See Zapf v. Comm'r of Soc. Sec., 145 F.3d 1335 (6th Cir. 1998) (finding no 9.08 Listing when the claimant "had only a mild gait disturbance,

did not use a cane, and did not require an ambulatory assistance"); Scott v. Apfel, No. C98-4098-MWB, 2000 WL 34032812, at *15 (N.D. Iowa Feb. 17, 2000) (finding that Listing 9.08 was not satisfied because the claimant could walk a block-and-a-half), aff'd, 89 F. Supp. 2d 1066.

Janis also argues that remand is necessary because the ALJ failed to articulate why the Listings were not met and failed to seek clarification from Dr. Akhtar or Dr. Goff.  This contention fails because the ALJ does not have to articulate explicit reasons for concluding that no Listing is satisfied so long as that conclusion is supported by substantial evidence in the record as a whole. Senne, 198 F.3d at 1068 ("[D]eficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case").

## III.   Treating Physician

Janis contends that the ALJ erred in discounting Dr. Akhtar's opinion, a treating physician.  Dr. Akhtar submitted two different RFC questionnaires that purported to discuss Janis's physical limitations during the period between January 1, 1997, to June 30, 1998.  AR 365-69, 603-07.  The ALJ gave Dr. Akhtar's opinions minimal weight because they lacked clinical evidence and were inconsistent.

According to the regulations, a treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and

21

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case."  20 C.F.R. § 404.1527(d)(2).  Even if not controlling, "[a] treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight."  Cunningham, 222 F.3d at 502.  A treating physician's opinion still must be considered in conjunction with other evidence contained in the record as a whole.  Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000).  An ALJ can "discount or even disregard the opinion of a treating physician where other medical assessments 'are supported by better or more thorough medical evidence,' or where a treating physician renders inconsistent opinions . . . ."  Id.  (citations omitted) (quoting Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997)).  The ALJ must state good reasons for the weight assigned a treating physician's opinion.  Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005).

Dr. Akhtar has treated Janis since 1986 and qualifies as a treating physician.  See 20 C.F.R. § 404.1527(d)(2).  In both the October 29, 1998, RFC questionnaire (1998 Questionnaire), and the June 25, 2002, RFC questionnaire (2002 Questionnaire), Dr. Akhtar opined that Janis was unable to do any gainful employment.  AR 367, 605.  These specific opinions are not controlling because "'statements that a claimant could not be gainfully employed are not medical opinions . . . .'"  Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002); see also Vandenboom v. Barnhart, 421 F.3d 745,

750 (8th Cir. 2005).  The Commissioner, not the treating physician, determines whether the claimant can engage in substantial gainful employment according to the statute.  Vandenboom, 421 F.3d at 750.

Dr. Akhtar also opined on the physical limitations imposed by Janis's diabetes mellitus, his peripheral neuropathy, and his heart disease.  These are medical opinions issued by a treating physician, and as such, are typically entitled to substantial weight.  See Cunningham, 222 F.3d at 502.  In this particular instance, however, Dr. Akhtar's opinions were not supported by clinical or medical diagnostic testing.  Neither the 1998 Questionnaire nor the 2002 Questionnaire referenced specific medical or clinical findings.  Further, the medical records as a whole do not support the severity of impairment described by Dr. Akhtar.  The EMG merely notes generalized neuropathy without indicating the severity of Janis's symptoms.  AR 225.  The opinions of every other evaluating and reviewing physician indicate less severe limitations.  AR 203-4, 206-07, 383, 493-94.  As part of his treatment at the VA domiciliary, Janis was assigned to a walking-exercise program, a vocational rehabilitation program, and an arts and crafts program.  AR 238, 236, 256, 298-99.  Finally, physical examinations showed that while Janis exhibited some loss of protective sensation in his feet, he could feel a light touch, had normal reflexes, and had no edemas, erythema, cellulitis, or fissuring in his extremities.  AR 203-04, 249, 304, 308.  Accordingly, the ALJ

23

stated a good reason for discounting Dr. Akhtar's opinions, because the opinions were not supported by clinical or medical diagnostic testing or other medical evidence.  See Reed, 399 F.3d at 921.

Additionally, Dr. Akhtar's 1998 Questionnaire and 2002 Questionnaire contained several inconsistencies.  The 1998 Questionnaire states that Janis can sit continuously at one time for more than two hours.  AR 367.  The 2002 Questionnaire, despite covering the same time period, states that Janis can sit continuously at one time for only five minutes.  AR. 604.  The sitting limitations in the 1998 Questionnaire are also internally inconsistent, stating that Janis can sit for more than two hours continuously at a time but can only sit two hours total in an eight-hour day.  AR 367.  Additionally, the 1998 Questionnaire states that Janis can stand continuously at one time for five minutes, whereas the 2002 Questionnaire claims he can stand continuously for ten minutes.  AR 367, 604.  Furthermore, the 1998 Questionnaire states that Janis can never lift any weight in a competitive work situation.  AR 368. According to the 2002 Questionnaire, Janis can lift less than ten pounds occasionally.  AR 605.  Finally, the 2002 Questionnaire noted that Janis had problems with coronary heart disease, decreased hearing in his right ear, and decreased vision, none of which were mentioned in the 1998 Questionnaire. These are significant inconsistencies that support the ALJ's discrediting of Dr. Akhtar's opinions.  See Vanderboom, 421 F.3d 745.

Dr. Akhtar's opinions are also inconsistent with Janis's actions.  As noted above, in the summer of 1999, Janis tended livestock for at least five days a month, nine hours a day.  Janis testified that he rode a horse for at least fifteen minutes between locations.  AR 77.  This is inconsistent with Dr. Akhtar's 2002 Questionnaire, which states that Janis can sit continuously for only five minutes at one time.  Further, Janis testified that he walked twenty-eight blocks, which contradicts Dr. Akhtar's opinion that Janis can only walk a half block due to pain.  These inconsistencies justify the discounting of Dr. Akhtar's opinion.  Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (discounting treating physician's opinion because it conflicted with the claimant's testimony).

**IV.    RFC**

Janis contends that the ALJ's determination of Janis's RFC was not supported by substantial evidence because no medical evidence was identified by the ALJ to support the RFC.  "'Residual functional capacity' (RFC) is defined as 'what [the claimant] can still do' despite his or her 'physical or mental limitations.'"  Lauer v. Apfel, 245 F.3d 700, 703 (alteration in original) (8th Cir. 2001) (quoting 20 C.F.R. § 404.1545(a)).  Although the ALJ bears the burden of determining the claimant's RFC based upon all evidence in the record, the matter is a medical question that must be supported by some medical evidence.  Krogmeier, 294 F.3d at 1022.  An opinion of an evaluating

25

physician can provide substantial evidence.  <u>Smallwood v. Chater</u>, 65 F.3d 87,

89 (8th Cir. 1995).  Further, the opinion of a reviewing physician, if supported

by other medical evidence, is substantial evidence.  <u>Krogmeier</u>, 294 F.3d at

1022.

In this case, the ALJ found that the reviewing, state physician's RFC

assessment dated April 5, 1999,[5] accurately described Janis's RFC.  Based on

this RFC assessment, Janis had the ability to work at the "light work"

exertional level.  <u>See</u> 20 C.F.R. § 404.1568(b).  Nevertheless, the ALJ gave

Janis the "benefit of the doubt" and adopted the RFC previously articulated by

ALJ Kaplan, which found that Janis could work at a sedentary exertional

level, with a sit/stand option, frequent final manipulation bilaterally, and

limited ability to stoop, climb, kneel, and handle.  AR 38.  Based on this RFC,

the ALJ determined that Janis did not qualify for disability benefits.

The RFC is supported by substantial evidence in the record as a whole.

The reviewing, state physician's RFC assessment dated April 5, 1999,

indicated that Janis had greater functional ability than articulated by the ALJ

in the RFC.  AR 491-98.  A second reviewing, state physician's RFC

assessment also stated that Janis had greater functional ability than

---

[5] The ALJ's decision states that the RFC assessment is dated April 1, 1999.  AR 38.  The record contains no such RFC assessment; however, it does contain an otherwise similar RFC assessment dated April 5, 1999.  AR 491.  The court understands the ALJ's decision as referring to the RFC assessment dated April 5, 1999.

articulated in the RFC.  AR 205-12.  Further, the RFC is supported by the findings from Dr. Beasley's evaluation.  AR 203-04.  Although Dr. Akhtar's RFC opinion suggests greater limitations, the ALJ properly discounted his opinion.   Finally, the RFC is further supported by Janis's engagement in ranching activities and his participation in vocational rehabilitation, an exercise program, and an arts and crafts program.

Janis does not suggest a particular limitation that the ALJ improperly excluded from the RFC; rather, Janis argues that the ALJ failed to identify medical evidence to support the RFC.  The ALJ, however, need not specifically cite the supporting medical evidence.  See Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003) (rejecting claimant's argument that ALJ erred for failing to cite specific medical evidence to support the RFC).  And, in any event, the ALJ did point to specific medical evidence supporting the RFC–the reviewing, state physician's RFC assessment dated on April 5, 1999.

## V.    Vocational Expert Evidence and SSR 00-4p

Finally, Janis argues that the ALJ erred at step five in the sequential evaluation because the ALJ failed to sufficiently develop the record as required by SSR 00-4p.  According to SSR 00-4p, whenever the ALJ relies on a VE's description of job characteristics, the ALJ "has an affirmative responsibility to ask about any possible conflict between the VE . . . evidence and information provided in the DOT."  SSR 00-4p requires the ALJ to ask the VE on the

27

record whether his testimony is consistent with the DOT.  The ALJ's failure to ask only requires remand, however, if an apparent inconsistency exists between the VE's testimony and the DOT.  See Tisoit v. Barnhart, 127 Fed. Appx. 572, 574 n.1 (3d Cir. 2005); Hackett v. Barnhart, 395 F.3d 1168, 1175-77 (10th Cir. 2005).  See also Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 979 (8th Cir. 2003) (stating that a VE's testimony that conflicts with DOT is not substantial evidence unless other evidence explains the conflict).

Here, it is important to note that the VE only testified in the hearing before ALJ Kaplan, not at the second hearing before ALJ Geyer on remand. The first administrative hearing occurred on July 28, 1999.  AR 47.  SSR 00-4p only applies to hearings held after December 4, 2000, when the ruling was published in the Federal Register.  Rule Notice, 65 Fed. Reg. 75759-01 (Dec. 4, 2000).  As a result, SSR 00-4p did not apply to the first administrative hearing, and ALJ Kaplan did not ask the VE whether there were any inconsistencies between the VE's testimony and the DOT.  SSR 00-4p did apply, however, to the second remand hearing, which was scheduled for September 10, 2002.  AR 24.  To comply with SSR 00-4p, Janis requested leave to submit interrogatories to the VE to ask if the VE's testimony was consistent with the DOT.  AR 39.  The ALJ refused to permit the interrogatories, reviewed the DOT himself, and concluded that there was no "material discrepancy between the VE's testimony and the DOT."  AR 39.

The ALJ failed to comply with SSR 00-4p.  The VE testified about the job requirements of an order clerk and a charge account clerk.  AR  93-96. The ALJ's refusal to permit interrogatories means the ALJ has never stated whether the VE's testimony was consistent with the DOT in this case. According to SSR 00-4p, this is a violation of the ALJ's affirmative duty to develop the record.

Further, this failure was not harmless because an apparent inconsistency exists between the VE's testimony and the DOT.  Based on the hypothetical formulated by ALJ Kaplan, the VE opined that Janis could perform the jobs of order clerk and charge account clerk.[6]  AR 93.  ALJ Kaplan's hypothetical described Janis's physical limitations as a limited ability to handle.  AR 93.  According to the DOT, the physical demands of both jobs require handling frequently (one-third to two-thirds of the time).  AR 628, 632.  Based on the current record, the court cannot determine whether the VE's testimony is consistent with the DOT, because the record does not explain whether a limited ability to handle would, or would not, prevent someone from handling frequently.[7]  See Doucette v. Barnhart, No. 04-89-P-S,

---

[6] The VE opined that Janis could perform some other jobs as well, however, the ALJ found that Janis had an RFC to perform the jobs of order clerk and charge account clerk only.  AR 39-40.

[7] ALJ Geyer, in interpreting ALJ Kaplan's hypothetical, claims that Janis's limited ability to handle referred to the previous sentence, which noted the capability for frequent fine manipulation.  AR 38.  If so, then the VE's

2004 WL 2862174, at *5 (D. Me. Dec. 13, 2004) (remanding to determine whether "slightly limited" reaching ability prevented the claimant from frequent reaching).  Because there is an unresolved inconsistency between the VE's testimony and the DOT, the VE's testimony does not provide substantial evidence to support the ALJ's findings at step five in the sequential evaluation.  See <u>Jones ex rel. Morris</u>, 315 F.3d at 979.  Remand is necessary so that the ALJ can comply with SSR 00-4p and resolve this, and any other, inconsistency between the VE's testimony and the DOT.

Accordingly, it is hereby

ORDERED that Janis's Motion to Reverse the Commissioner (Docket 12) is granted and the case is remanded to the Commissioner.

Dated January 13, 2006.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

---

testimony would appear consistent with the DOT.  The court disagrees with this interpretation because it would render ALJ Kaplan's use of the word "handle" superfluous.  Further, both of the reviewing, state physicians' RFC opinions distinguish between fine manipulation and handling.  AR 208, 494.